Morning, may it please the court, Kyle Philens for Appellant Brownfield. The Song-Beverly Consumer Warranty Act of the Lemon Law has two main components, the defect element and the repair opportunities element. Appellant must present the vehicle for repair of a defect that substantially impairs the use value or safety first, and that defect must not have been repaired after a reasonable number of repair opportunities. That's the number two point. The erroneous jury instruction added an additional element that the defect, actually that the symptoms, must be presented a reasonable number of attempts, but that's in fact not the law. Symptoms wasn't the word that was used there, counsel. Understood. If they had used symptoms, you might have a different argument, but they didn't use the word symptoms. Right, and defect has been used throughout all the jury instructions, and if defect was intended, defect would have been used, and that's understood as what a defect is to a consumer, a non-conformity to warranty. The term that they did use was any particular problem, and for three reasons, any particular problem should be understood as a symptom. First, the term problem. When a consumer goes to a dealership for an issue with the car, the service advisor says, what problems are you having with your car, as in what are the symptoms, not what's the underlying defect. If you interpret it to be, you know, what is the problem with your car, to be what's the defect, you're turning the consumer into a technician effectively, and the only requirement under Oregel is that the consumer present the vehicle for a non-conformity, not say what that defect is. Counsel, are there pattern instructions that are used for the Song-Beverly cases? Is there a pattern instruction that you propose that should have been used in the alternative? Yes, there's a Casey instruction, and the erroneous instruction was the first two paragraphs of Casey, plus an added third paragraph that used the term particular problem, which doesn't appear anywhere in Casey. Okay, so the, what I'm asking you, is there a CCI, you know, you know, they have the pattern instructions. Is there a numbered instruction that's generally used in these cases? Yes, it's 3201, I believe. Okay, and so you're saying that that instruction was used by the court, except it added a third paragraph that's not generally in that pattern instruction? Yes, it's 3202. 3202. And the second reason particular problem, or any particular problem, should be understood to mean symptom is the word any. Any suggests that there are multiple options. Well, in this case, there was, on both sides, only testimony as to one defect with many symptoms. By using the word any, it implies there... Counsel, I thought there were problems with an antenna that were probably not attributable to the electrical system. Yes, and the one-time mechanical repairs weren't argued, and if it was... Okay, but that was, but they were presented. I mean, she comes in, she testifies about how many times she brings the car in, so there were things that had to be excluded, because it clearly wasn't related to your theory of the case, which was that there was a systematic defect in the electrical system. Yes, Your Honor, and the one-time non-electrical repairs were the mechanical repairs, and those aren't the ones we're talking about. We're talking about the one-time electrical repairs. Counsel, your theory of the case was presented through your expert witness, Mr. Califf, and in the argument for, in the motion for a new trial, the district judge seems to have understood your theory perfectly. That is, as you were arguing that particular problem meant that we were just looking for whatever the symptom was that the customer was complaining about, and the district court kept arguing back to you that you had argued a more comprehensive theory, which was that there was a systematic defect in the electrical system. So wasn't that your theory of the case? The theory of the case is that there's a systematic underlying electrical defect that manifests in many different symptoms. Some of the symptoms were presented just one time. Some were presented two times. Some were presented three times. But the electrical problems were brought back time and time and time again. That was your whole theory of the case. So, I mean, given this jury instruction, it may not be perfect, but what didn't the jury understand here? Well, the jury was instructed to, when it says, for any relief for a particular, any particular problem. Right. The particular problem could be the mechanical system as opposed to the electrical system. That would certainly be the way that you would want to characterize that, and according to the district judge, that's the way that you argued this case. Particular problem is understood to be symptom, by the way. Well, that depends on how you want to argue it, counsel. If I were you, and I were given this jury instruction, I would argue that any particular problem meant could mean the electrical system. It was manifested in many different ways, and that's exactly what your, what your expert said. Said it was like a daddy long legs. You had to find the body someplace, but the, but the legs were all out there and manifested themselves in different ways. I mean, that, that theory was, you made your theory and explained it pretty well. Understood, and under Lundy, if a jury instruction gives two possible legal theories, and we can't tell which one the jury found, we have to assume that the jury found under the wrong instruction. The jury could have said particular problem means symptom, or they could have thought particular problem means defect. We don't know which they decided on, and if we don't know, there's two competing legal theories, and if there's two theories, we can't eliminate the wrong one. We have to assume the wrong one was followed. I'm still not sure I understand why, why we have to assume that the wrong one was followed here. You, you presented one theory. Jaguar presented a different theory. They found that there was a defect with the car. Under Lundy, citing Griffin, given an instruction that allowed the jury to read under two competing legal theories, you have to assume they chose the incorrect legal theory, and the incorrect legal theory is that particular problem means symptom, or they chose the wrong one. Because that's a heightened burden for the Song-Beverly Consumer Warranty Act. That's not required. I, I'm still not sure why, why Lundy has any relevance to how the jury, how the jury viewed this problem. Again, there's two competing theories. There's always going to be two competing theories, or you're never going to get it to a jury. Well, there's two, of course, there's two competing theories, but there, the jury was given two different possible interpretations of the law. They were given two ways to look at the law, not two competing theories. They're, they're asked, was it brought back a reasonable number of times? But defect, defect is not a technical term, and you are perfectly free to argue that the defect was in the electrical system, that the particular problem was the electrical system. And that's what you argued, right? That is what we argued. And I don't understand why this jury instruction somehow or other barred the jury from considering that, from aggregating. It was presented in our testimony and our argument, but the fact that it says any and particular, particular, again, just like any, implies that there are multiple things to choose from. It makes the most sense if you substitute symptom for particular problem, then defect for particular problem. It, it looks to me from, from, um, having read the expert's testimony and, and looking at the, at the arguments, that the real problem here is the expert was never able to tell them what the problem was in the electrical system. And that's true, and under most of the case law, plaintiff doesn't have to prove the cause of the defect. They just have to prove the defect exists, and that they presented it a reasonable number of times. Right, but at that point then, the question is, is the defect in the electrical system, or is, or is the defect in the mirrors and the seat that doesn't hold its place where it's supposed to? And that's what the, that's what was sent to the jury to decide. Well, and the jury decided that, that there was a defect, and defendant's case was that, well, both, both parties agreed there's a problem with the car, and it has many symptoms. Our theory was there's a global electrical defect. Their theory was Ms. Brownfield's use caused the battery to get depleted. That was the cause of the symptoms. The verdict forum went, is there a defect? Yes. Was it caused by Ms. Brownfield? No. At that point, plaintiff assumedly wins. Those are the only competing theories of the case. Reasonable number of repair opportunities wasn't even an issue. Well, it depends on, it depends on what the jury thought the problem was. There, there was no... And we don't really know, do we? We don't, we don't know. But the question... Sorry. But we do know that the jury found in favor of the plaintiff on the fact that there was a defect in the car. And so that's why you're arguing that the jury instruction really prevented them from making the, the ruling on reasonable opportunities because the jury, the jury instruction split the repairs into all of these different, discrete problems instead of having them under the umbrella of the defect that was found by the jury. Exactly. The jury found that there's a defect, but by splitting up symptoms, no one symptom was presented more than three times. So when the jury's looking at reasonable number of repair opportunities, they're capped at three as opposed to the total of eleven. Now, they could have linked them together and found three, four, five, six, ten, eleven. We don't know what they would have found with a proper jury instruction. But we know with the one instruction they did get, they were capped at three. And they said, three, is that reasonable? Well, two's the minimum, three might be reasonable. They weren't allowed to consider anything more than three. No, that's, that... Counsel, it's just, it's just overstating the case to say they weren't allowed to consider. They were allowed to consider whatever they darn well pleased. They, they had your, they had your whole theory of the case laid out before them. You had an expert witness there who was very articulate. He had to be reined in a couple of times by the district judge because he kept going on. He seemed to understand, have a lot, had a lot of knowledge about, about how the car worked and how the electrical system worked. What befuddled him and everybody else was, he could never identify with any specificity what the problem was in the electrical system. Obviously, this is a sophisticated automobile and it was complicated and he thought it was in the electrical system, but he was never able to isolate it. Agreed, and that's not plaintiff's burden to isolate the ultimate problem. Right, but it, but it may be, it may be your burden if you wish to persuade the jury that it is a global problem in the electrical system. Understood. So, Counsel, is it your position that if the, that if the district court had given the standard jury instruction that that would have adequately informed the jury and allowed them to, render a verdict that, that would inspire confidence in the outcome? We requested the standard case instruction, the first two paragraphs. By saying to be entitled to relief for any particular problem, that implies that there's multiple problems to choose from, which implies that there's symptoms. It, it implies a plurality of possibilities and by saying any particular problem, it can be read only a symptom. If it was defect, they would have used the term defect. Everywhere else in all the case of jury instructions for, for Song-Beverly, the term defect is used, substituted for non-conformity to warranty. If the judge meant defect, he would have put defect, but what's the jury supposed to see when they see a term they've never seen before, when they see defect, defect, defect throughout the instructions, but this one time they see a particular problem, they have to assume it doesn't mean defect or else they would have said the If the judge had used the word defect instead of problem in that portion that he added, would that have solved the problem? I believe so. So your focus is on the one word, problem, which is used twice. Line five and line seven. Particular problem. Particular problem. But you could have said any particular defect. I think that would be misleading because there was only one defect, but that would have been better. Yes. Using the term defect instead of particular problem. Particular problem. So, so there's a, there's a difference, there's a difference here that the jury would have been confused between the word problem and defect? I believe so, because as I stated earlier, a consumer goes to a dealership and they ask, what's your problem with the car? They don't say what's the defect. A consumer can't say, uh, I have a blown o-ring that's causing scoring on the number four piston wall. That, that's not what the Consumer Warranty Act is about. You present it for a problem, and that is a symptom. What problems are you having? What symptoms are you having? Well, your theory of the case was there's only one defect, and conceivably there were many defects, none of which, I mean, all of which were totally independent. I mean, it runs the full range, does it not? I don't agree. There's one underlying defect. Yeah, but that's your contention. But the jury is free to... I'm sorry, the jury found one defect. The jury found that there was a defect, and it was our opinion that it was an F.S. in multiple sentence. The jury found a defect. If there are no more questions... You may reserve your time, absolutely. We'll hear from the company. May it please the Court, good morning. I'm Robert Robinson of Bowman & Brook. On behalf of the appellee, Jaguar Land Rover North America, I'm here with my partner, Richard Stuhlbarg, who was the trial counsel in the case. I'd like to just present a brief overview of our points, Your Honors, and then I'd like to address some of the issues on the reply brief. At issue in this appeal is the propriety of the district court's instruction, and that's not just Jaguar's position, but that's a quote that comes from the opening brief of the appellant, and we agree. Appellant's briefing, however, was devoid of any discussion about the entering a motion in limine, and then entering a jury instruction to enforce that motion in limine when the district court found that his order in limine had been violated. It wasn't discussed in the opening brief. There seems to be in the reply brief a discussion, briefly, a suggestion that the motion in limine was improperly granted, but we respectfully submit that the brief discussion therein is insufficient to challenge the court's in limine. Counsel, may I ask you, where in the record does the court say that the instruction is being modified to rectify a violation of the motion in limine? I don't have the page citation handy, but the court did have that discussion and said at the time that when the issues were coming up that he was going to reserve the right to make a corrective instruction. Well, but that's different. A corrective instruction is different than a jury instruction. Well, the judge indicated that and it was understood that it would be part of a jury instruction. Well, but that's why I'm asking you where in the record is that, because I did not see in the record where the judge said that this motion in limine. The instruction emanated from an instruction that Jaguar provided, I believe it was the day after the judge had issued his ruling, that if there had been a, if there was a failure of the of the expert for the plaintiff to tie all of these, all of these alleged symptoms or problems as they're being called, symptoms and problems are different, and I'll address that in a moment. We provided that instruction. The court had a discussion about that instruction when the jury instructions were being done and the judge decided instead of using that instruction, which was specifically submitted to enforce the motion in limine, the judge said instead of that he was going to use, make his own modification to that. So he didn't use the specific words, but it's very clear from the record and I'd be happy to provide that page number to the court. Well, don't send anything unless we ask for it. I was hopeful that you would be able to give me that as part of your argument. I will have that and I may, if I can reserve some time at the end, I may take a moment to take a look for that and give the court that page number if that's permissible. Well, you have to ask the presiding judge. You may do so after the oral argument. Thank you, Your Honor. The court clearly has wide latitude to make evidentiary rulings and significant discretion, as I know this court has recognized, and that proposition was not in any way challenged by the appellant on appeal. Because of this alone, Jaguar submits that the district court's judgment should be affirmed. But if not, if not for that reason, Jaguar submits that the jury instruction was neither erroneous nor prejudicial and should not be the basis for overturning the judgment in this verdict. Section 3202, or the instruction 3202, as the court modified it by adding the section, did refer to a particular problem and that language was used. Nowhere in the appellant's showing does the appellant have any authority, any substance to suggest why it is that the jury would believe that particular problem has to mean symptoms as opposed to the defendant. And what's interesting, Your Honors, is that in the Robertson versus Fleetwood case, which is cited both in the appellant's opening brief and in the reply brief, that court uses the term problem and that court at page 801 uses the term symptoms. And it's very clear that the court is talking about problem in the terms of problem means a defect. Well, counsel, what's your response to opposing counsel's observation that the jury found there was a defect and throughout all of the testimony and all of the other instructions the word defect, defect, defect was used and then all of a sudden the word problem that never appeared before is there somehow misled the jury in its determination as to whether or not there were adequate repair opportunities given? Well, let me answer both of those questions, Your Honor. First, with respect to the finding of a defect, the verdict form says was there a defect. It doesn't say was there one defect or two defects or more than that. So the jury very easily could have found that there was more than one defect. We don't know that, but that's the form jury instruction that counsel said. That was not changed by the court. Right, but the word defect was used. Absolutely, and there's no doubt that the jury found a defect. Then the question is with respect to defect and does defect mean problem or not, what is the jury? The issue there is does the jury think the problem means something other than defect? But here's the important part. That was discussed in closing. The parties had an opportunity and told the jury what their theories were and said whether these were defects or not. In fact, in the reply brief, the appellant criticizes Jaguar's counsel for discussing with the jury what these different defects were and talking about those defects. And those were the particular things we were talking about them, what they call symptoms, we were talking about the defects. So it was all presented to it and the judge in the arguments with counsel, in discussion with counsel about this instruction, the judge said you will have an opportunity to discuss and explain this to the jury. And both parties addressed that. What do you have to find? And very clearly the plaintiff's counsel told the jury that felt all of these issues that were raised, whether you call them symptoms, problems, whatever it is, all of those things were related to one defect. So I don't believe that the jury was misled. I don't see that there's any authority that suggests that. And what we do know is is that the term problem and defect is used interchangeably in California law. And in the reply brief, the appellant said that particular problems cannot mean defect. But she cites no authority for that. But we do know when when I did a search there's over a hundred cases talking about in Song Beverly, California cases that seem to use the term problems and a problem and defect interchangeably. And let me go back if I may to the Robertson case again. As we know the Robertson case had to do with issues that arose from the water leak. We know that the defect was a water leak. And here's how the court describes the water leak. It repeatedly refers to it as the water leak problem. That appears at page 800 at least twice. Fleetwood failed to repair the water leak problem. And said that same phrase again. Fleetwood failed to repair the water leak problem. So it's it's clear in California jurisprudence that courts are using problem and defect interchangeably. So counsel your theory when the when the jury comes back and says that there was a defect here, your theory is that they may they might have found a half a dozen or even a dozen defects in this car. It's just it's just that that the Jaguar eventually fixed all of them. Well it's clear to us your honor that everything was fixed because on November 11th of 2000 I think it was November 11 maybe November 12th of 2011 there was an inspection of the vehicle. Plaintiff's expert Mr. Califf was there. He said in his testimony that he didn't see any defects there but because Jaguar hadn't proven to him that the underlying defect was fixed then he says the problem still existed. But there wasn't any evidence of that inspection. So yes we say we say that it was fixed and I and I and I appreciate the court bringing that question up because it leads me to to my next point which is that with respect to what this verdict and what the lemon law says the the question is not the third appellate would have argues whether there was a sufficient number of repair attempts. The the the issue is was it repaired? So the jury could answer that question and find for Jaguar by finding either that a there wasn't a it wasn't repaired but there wasn't a sufficient number of repair attempts for whatever reason maybe it's a complex issue and they or the jury could find that it was repaired. So there's two separate reasons why the jury very easily and and did find on behalf of Jaguar High Road. There is a repeated statement by the uh appellant that Jaguar admitted that all the problems as they call them or all the symptoms as they would call them were related to one defect. That simply isn't the case and I think the most cogent explanation and discussion of that is in the the very first document in the supplemental excerpts of the record which is the opinion from the district judge denying the motion for new trial and I don't think I could do a better job summarizing and addressing the issues than that. For all these reasons your honors we believe that it would be appropriate and right to affirm the judgment and if I may I will take a look for the citation that Judge Rollinson asked for and will provide that to the court. You may do so before you leave the courtroom just give that information to the deputy clerk. Thank you very much. Thank you. Mr. Fellons you have some return reserve time. Thank you. In response to the contention that appellate courts California courts have interchangeably used a problem and defect and there's all this authority where problem equals defect that might be true but the jury in front of Mrs. Brownfield was not privy to any of that information. Well does that matter though if the if the law recognizes that defect and problem are synonymous then how could that be misleading in the jury instruction if it's cognizable in California cases? Because as stated previously throughout all the other instructions it was always defect and then the jury sees something else that they've not been read on they have no case law research and it's the first time they see a particular problem they can't assume it means the same thing because it never has before they've never seen those two equations. But you had the opportunity to argue that to them it's the same thing. Which we did but they had the opportunity to consider its symptom instead and if they considered its symptom they were capped at three repair opportunities. Secondly as to the contention that the car might be fixed under Robertson itself as cited by opposing counsel the court disagreed with if it's fixed then no problem for defendant. We can admit that the car is fixed and still went on the reasonable number of repair opportunities the car doesn't need to currently be broken. If you bring the car in for a you say oh well they fixed it this time you can still file a lawsuit you can still win the question is was it repaired to warranty after a reasonable number of repair opportunities it can be fixed and you can still win the lawsuit being repaired is irrelevant it's after a reasonable number of attempts that can be 3, 4, 10, 15. Thank you counsel your time has expired thank you thank you the case just argued will be submitted for decision and we will hear argument next in Ibrahim versus the Bayer corporation.
judges: O'SCANNLAIN, RAWLINSON, BYBEE